
FILED
2010 Nov-29 AM 10:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| SARA S. LAWLESS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-G-2501-NE |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## **MEMORANDUM OPINION**

The plaintiff, Sara S. Lawless, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## **STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

> (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Earl C. Cates, Jr., determined the plaintiff met the first two tests, but concluded that while the plaintiff's "status post laminectomy in January 2007, degenerative disk disease (DDD) at L1-L4, depression/adjustment disorder, and morbid obesity" are "severe" in combination, they did not meet or medically equal a listed impairment. [R. 13].  The ALJ found that the plaintiff retains the residual functional capacity:

> to perform a range of sedentary work with lifting a gallon with either hand, sit 1 hour at a time and 7 to 8 hours in an 8-hour workday, walk one block and back before needing to sit, and stand in one position for 2 to 3 minutes.

[R. 16].   He found that the plaintiff is capable of performing her past relevant work as a caseworker, which is sedentary and skilled, and eligibility worker, which is sedentary and skilled. [R. 19].  Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

### THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN OR OTHER SUBJECTIVE SYMPTOMS

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony

5

must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## WHEN ADDITIONAL EVIDENCE IS SUBMITTED TO THE APPEALS COUNCIL

Claimants are permitted to submit new evidence at each step of the review process, 20 C.F.R. § 404.900(b)("In each step of the review process, you may present any information you feel is helpful to your case.  [W]e will consider at each step of the review process any information you present as well as all the information in our records.").  The Appeals Council is required to consider the entire record, "including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 404.970(b); Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994).

To be material the proffered evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result."  Caulder, at 877.  A review of the evidence submitted to the Appeals Council demonstrates that it meets all of the requirements of the regulations for consideration by the Appeals Council.  Because the Appeals Council actually considered the evidence, the court will only review whether the Appeals Council committed reversible error in refusing to review

the plaintiff's case in light of that evidence. The Regulations require the Appeals council to "review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).

Moreover, a "district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when the court reviews the Commissioner's final decision denying Social Security benefits." Ingram v. Astrue, 496 F.3d 1253, 1258 (11th Cir. 2007). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram at 1262.

> In Bowen v. Heckler, the claimant filed evidence in the Appeals Council, which considered the evidence but denied review. 748 F.2d 629 (11th Cir. 1984). We held that "the Appeals Council did not adequately evaluate the additional evidence" and, citing earlier precedents, reasoned that "[w]e have previously been unable to hold that the Secretary's findings were supported by substantial evidence under circumstances such as these." Id. at 634. . . . After quoting sentence four of section 405(g) in full and discussing it at length, we concluded that a reversal of the final decision of the Commissioner was appropriate. We held that "the Appeals Council should have awarded Bowen disability insurance benefits," and we remanded to the district court "for entry of an order . . . that such an award be made." Id. at 637.

Ingram at 1263.

## DISCUSSION

The plaintiff was 52 at the time of ALJ Earl Cates's decision. She has B.S. in sociology and worked as a social worker (case worker supervisor) until January 10,

2007.  The ALJ found that she has the following severe impairments: "status post laminectomy in January 2007, degenerative disk disease (DDD) at L1-L4, depression/adjustment disorder and morbid obesity." [R. 13]. The ALJ noted that the plaintiff:

> . . . complained of back pain and underwent a laminectomy on January 30, 2007.  She took 12 weeks of family medical leave but stated that she was unable to go back to work within that time.  Since she could not go back they terminated her employment.  She filed for and was granted short-term disability. When it lapsed, she filed for unemployment benefits and searched for work.  Her unemployment ended about December 1, 2007.  Since she could not find a job, she decided to go to college for a second degree in graphic arts.  For the semester January to May 2008 (spring 2008), she completed 6 semester hours.  She did not admit to going to college for the summer, but returned in the fall of 2008 taking 6 semester hours.  She is currently enrolled taking 6 semester hours for the spring 2009 semester.  At the end of this semester, the claimant will have completed 18 semester hours, about ½ of the 35 semester hours required in her major for the second degree.  Six semester hours is not considered full time but it consumes a good part of her day to the extent that it would be nearly impossible to attend college and work full time at any job.  Full time is 12 semester hours, 6 semester hours is ½ time, not considering the claimant also spends a significant amount of time studying outside the time in class.  She testified that she goes to school on Mondays and Wednesdays and the classes are 2 hours long.  The claimant claims that she is struggling to complete 6 semester hours per semester and there is no way she could go full time.  However, it appears that going to school is a life-style choice; she said she is living on student loan money until she can figure out what she can do.  She did not think she wanted to be a social worker anymore so she is pursuing a second bachelor's degree in graphic arts so she can work in a different field.

[R. 18-19].

The medical evidence shows that on January 29, 2007, an MRI of the lumbar spine showed that:

8

Case 5:09-cv-02501-JFG   Document 10   Filed 11/29/10   Page 9 of 12

> significant findings are seen at the L5-S1 level. In addition to degenerative disc and bony change, there is abundant abnormal signal and enhancement to the left of midline. Although the enhancing material is predominately in the epidural space and along the course of the exiting left L5 and S1 nerve roots, there does appear to be some enhancement of the disc and the adjacent end plates on the left laterally suggesting a component of discitis [sic] and/or osteomyelitis. An epidural component is thought to be present and measures on the order of 7 mm in thickness along the anterior margin of the thecal sac.

[R. 200]. The plaintiff underwent a left L5-S1 laminectomy and evacuation of an epidural abscess by Rhett Murray, M.D., a neurosurgeon. After the surgery, the plaintiff's leg pain was much improved. [R. 240]. She was followed by LeRoy Harris, M.D., an infection disease specialist, because of a persistent post-operative infection. By May 2007, her leg pain had resolved, but still was suffering from back pain. [R. 237]. Dr. Murray noted "[t]here has been some collapse of the disc space height." [Id.]. Because the plaintiff weighed 300 pounds, Dr. Murray referred her for gastric bypass evaluation.

From May 21, 2007, through June 30, 2009, the plaintiff was treated by Qi Wan, M.D[1]. On December 3, 2007, Dr. Qi faxed a letter to Trey Riley, the plaintiff's attorney:

> Ms. Lawless was initially referred to me by Dr. L. Harris for general medical care in February of 2007. Patient had history of Type II DM, HTN and obesity. She developed LS abscess after her UTI and had to have surgery done with Dr. Murray on 1/31/07. Post operatively, she did go

---

[1] Both the ALJ and the parties refer to Qi Wan, M.D., as "Dr. Wan." However, in Chinese culture, family names are placed before given names (for example, NBA basketball player Yao Ming would be referred to as "Mr. Yao.") Therefore, the court will refer to Qi Wan, M.D., as "Dr. Qi."

> through physical therapy. She continued to have debilitating lower back pain after the surgery and physical therapy. Her previous job was a social worker which required significant driving and walking. She complained that she was not able to tolerate the long distance driving and prolong walking or standing due [to] her back pain. She did go to see Dr. Murray several times after the surgery and no invasive intervention was performed. I did ordered [sic] a repeat LS MRI in June 2007 due to her constant complaint of lower back pain and debilitation, it did show post-operative changes with evidence of facet degeneration and disc protrusion. EMG done [sic] also showed mild bilateral L5S1 radiculopathy. She did see Dr. Murray after the EMG and was recommended for physical therapy again and she did achieve the maximum benefit according to her physical therapist. She continues to require pain medication for her lower back pain and her pain medicine requirement has not been decreased after the physical therapy.
>
> On her physical examination, her vital signs were stable and her BG was under good control. The only objective finding related to her lower back conditions were limited ROM due to the complaint of pain. No obvious focal neurological deficit or muscle weakness. The lower back pain is more localized tenderness and no obvious radiculopathy. She is morbidly obese.
>
> Patient's subjective complaint was persistent lower back pain and she could not perform meaningful or productive physical activity. She stated that she could not drive for more than 20 or 30 minutes at a time and she could not walk continuously for more than 20 minutes. She is not able to lift weight. Emotionally, she was quite depressed because she was not able to go back to work and she is not able to find [an] appropriate job for her.
>
> The patient did have radiographic evidence of LS problem and EMG evidence of mild bilateral L5S1 radiculopathy. Physical examination mainly limited to local tenderness. Her subjective complaint could not be measured with [a] numeric number. In general, I do agree that the patient did have moderate limitation in terms of her physical condition and her previous job is not appropriate for her.

[R. 421-422].

        The ALJ found that the plaintiff could perform her past relevant work as a child welfare caseworker at the sedentary level. [R. 19]. He did not have the benefit of

additional evidence which was presented to the appeals council[2].  Dr. Qi's June 30, 2009, Physician's Statement or Opinion About Patient/Claimant noted that the plaintiff's impairments have more than a minimal effect on her ability to do basic work activities, and that these limiting effects are severe or reasonably expected to be severe.  Dr. Qi thought that the plaintiff could sit for one hour a day with frequent breaks, walk short distances and stand momentarily.   Dr. Qi did not think the plaintiff could work eight hours a day; in fact, he wrote that the plaintiff was unable to work because of chronic pain in her back and knee.  Had the ALJ had the benefit of treating physician Qi's opinion, it most certainly would have changed the administrative result.  Because the Commissioner ignored or failed to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.

In his brief, the Commissioner said that Dr. Qi's report "is new evidence, but reflects limitations after the period of the ALJ's decision." [Comm'r's brief at 11]. However, the ALJ's decision was dated May 6, 2009; Dr. Qi's report is dated June 30, 2009, less than two months after the ALJ's decision, and certainly contemporaneous with it.  However, although reversal of this case is warranted, remand would also be proper because of the existence of this new and material evidence.  The plaintiff submitted these

---

[2]  Because it does not appear in the certified record, the plaintiff moved to have this court supplement the record with this evidence, and the defendant did not object. Moreover, the Order of Appeals Council dated October 8, 2009, states that Dr. Qi's June 30, 2009, Physician's Statement or Opinion about Patient/Claimant and Patient/Claimant's Work Restrictions form was received into evidence. [R. 4].  However, this does not appear in the certified record, which is why the plaintiff moved to supplement the record.

records to the Appeals Council, which issued a boilerplate denial. The Commissioner has stated in brief that, "If the court determines that the new evidence meets the standards outlined for new and material evidence, then it should remand the case to the Agency for further administrative action pursuant to sentence six of 42 U.S.C. § 405(g)." [Comm'r's brief at 11]. "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether the new evidence renders the denial of benefits erroneous." Ingram at 1262. The Appeals Council committed reversible error in failing to either review the plaintiff's case or to remand it for further proceedings.

## CONCLUSION

Therefore, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 29 November 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.